The case on our docket is 20-10533 Jenkins v. Lasalle SW Corrections. Mr. Lippy? Good morning, Your Honor, Chief Judge Richmond, Judges Elrod and Oldham. We appreciate, on behalf of Jake Jenkins, the opportunity to present this case on appeal. It involves Rule 60B, and as this Court wrote in Sevenells v. Eskenazi, Rule 60B is an attempt to strike a balance between a desire for finality of judgments and the incessant command of the Court's conscience to do justice in light of all of the facts. We believe that here the facts under 60B-6 satisfy the extraordinary circumstances requirement of that subsection of the rule for this reason. First of all, the merits are overwhelmingly clear. It's a relatively simple case. Jenkins was injured. His eye was damaged. He went to outside medical practitioner. They determined that there was a detached retina. Surgery was needed immediately. Surgery was scheduled. Lasalle had specific knowledge of the date of the surgery and despite that knowledge transferred him that day to another facility and did not give him the opportunity to get the surgery. By the time he went back to the doctor, the time had passed. His condition was incurable, so he has lost eyesight in one of his eyes. As a prisoner, he filed a pro se complaint, and we have to address the elephant in the room. Yes, this is a prisoner case. Yes, we recognize that the courts have been overburdened with frivolous pro se cases. There's been legislation attempting to address it, and former law clerks have told me that prisoner cases are the bane of their existence, but the court obviously does wish to apply due process of law in a fair manner. Chief Magistrate Judge Horan did advise Jenkins of the requirements of a 1983 case. We certainly don't criticize anything that Magistrate Judge Horan did in that respect. Jenkins filed what he could in his best fashion, but after the magistrate announced his findings and before a final judgment was entered, and this really is, I believe, the critical event in the case, Jenkins submitted a request for a stay of the proceedings, advising the court on July 20. He sent it July 22. It was filed July 26, advising the court that on August 10 he was going to be released and saying, I recognize that I haven't satisfied you, Judge, and I'm asking for additional time to be able to retain counsel so that we can present my case. About the same day that he was released, the final judgment was issued. After searching around, Jenkins retained me, and we filed, along with the 60B case, and this is the second aspect that I think is important to satisfy the extraordinary circumstances requirement, a proposed amended complaint that addressed, I believe, adequately and completely all of the concerns that the magistrate judge had pointed out to satisfy the requirements of 1983. Without attempting to be personal, the point that I would emphasize is that the element of policy required under 1983 that the policy of deliberate indifference actually be a policy of the institution is something that a prisoner who's lost sight in one eye, has no funds, as the record indicates, no ability to go out and interview people in the community for obvious reasons, he didn't have the knowledge of what LaSalle's practices had been, and he couldn't address that requirement. Just as a factual matter, you were retained immediately after he was released? No, it was about four months later. What changed in those four months? Did he get more wherewithal or more financial resources? Well, he didn't pay anything. That's what I'm asking you. He could have retained you. What was different? Why couldn't he retain you while he was in prison? What changed that permitted him to retain you after he was released? His ability to investigate and talk to people and find out who's been handling cases. You know, the man is not very well educated. He's lost sight in one eye, doesn't have money. He had to ask around, basically. Is it clear that the magistrate judge or the district court actually knew of the stay request at the time it entered its order of dismissal? Is that because it's not referenced, or was there ever a denial order entered? I don't see that. It was just ignored. Is it possible that it just kind of lost in the shuffle? I have to admit that it's possible, but that's terrible. It was file stamped July 26th. But it was not ruled on, except to the extent that you tie it up in a bow and you sign the final order, you rule on every pending motion. And the court had already given multiple extensions to the other side, so why wouldn't the court have given one short extension to the plaintiff? The court's been given extensions all the time, repeatedly. I'm going to ask you the same question. So it just seems odd. Well, that's one of our main points, is that LaSalle, with its resources, having complete access to all the records, LaSalle's counsel had to say, gee, because Jenkins was bounced around to different places, it's going to take me a while to assemble all the documents to be able to file an answer. And then there were two sua svante extensions by the magistrate judge. So, no, I don't understand it. The clerk, the point is made in Apolli's brief that the notice of judgment was returned unclaimed and they blame Jenkins for not addressing his change of address. Well, it's right there. Look at Record 285-286, the appellate record, where in his handwritten notice he says, I'm going to be released on this date, right now my address is this, after my release it's going to be this. That's another factor that makes you think that they didn't even have that in front of them at the time they're making the decision. That's very likely the case, and I don't have a good answer for that other than Jenkins had sent it, it was correctly numbered. What's your best case that we should overturn the 60B determination? At pages 22 to 23 of the opening brief, we cite Liljeburg and Chamberlain and Claprot, where basically the U.S. Supreme Court had said that relief should be granted considering the circumstances of the lack of funds and the inability to have counsel and the lack of knowledge of the person who was applying for the relief. Did he have all of his medical records? The defendants were gathering the medical records. Did he have all the medical records bundled up with him in the prison or anything? He was supposed to, but no, he didn't. When I first met with him, he said, here's all my files. Here's all of them. And then later on I sent a request to LaSalle, and lo and behold, there were additional records there. And what those records show essentially is repeated requests for medical attention. He's sent to the outside physician. He's diagnosed. The schedule is made for his surgery. And then two days before the scheduled surgery, he signs a consent form, and it's in their file. And what do they do? They're the ones that control him. He can't just walk out of prison and go to the doctor. They send him to Waco instead of where he's scheduled to have his surgery. Does he allege that this was intentional, some kind of retaliation or something? We don't have the word retaliation in there. We just think that it was the attitude of LaSalle toward inmates. You know, I believe that. They want somebody to go to blind? I mean, that's a pretty serious allegation, and that's why I'm asking if it's in the complaint or anything. And I don't see it. Well, I've argued in the brief that I was uniquely able to present the policy of LaSalle because of prior cases. The Alan Peroni case, an elderly man with diabetes saying, I'm cold and I need a blanket, and they said, you don't have proper documentation. Mr. Beasley, I was in a car wreck. My chest hurts. They didn't give me an X-ray. He died of an infected sternum. And one to come, a fellow needing HIV medication, and they don't give it to him. I can't answer. I mean, that all goes to the fact that he was pro se incarcerated. I mean, that evidence was available to somebody. And you're asking us basically to say give a different burden to someone who's incarcerated without counsel. He didn't know about these other cases. He just didn't know it. And he was required, under the cases cited by the magistrate judge, to establish that it was not just deliberate indifference, but also that this was a policy. I admit that that's the law. But he couldn't. He didn't have the knowledge. And he wasn't able to locate counsel who had the knowledge. And when he did, we filed a proposed amended complaint. Now, I know this court doesn't want to open up the floodgates. Tell us how we can rule in this case and not do that. That's probably the best question that this appeal presents, Your Honor. And I think the answer is to look at the extraordinary circumstances. Number one, look at the merits, the underlying merits of a claim. Lots of prisoners complained that, gee, I'm being mistreated, and, you know, they're saying bad things about me, and all these horrible things are happening. But here we have a very clear, specific set of facts. Second, we have a proposed amended complaint that's very detailed, that sets out what the cause of action is. And we have the request for additional time addressed to the same court that had previously granted all these other extensions of time to the defendants. Remind me, how much additional time did he ask for? He was not specific. He said, I request that the court stay the proceedings so that I'm given time to retain counsel upon my release. But he said how long it would be for his release. He gave the specific date of August 10th. But he didn't say, I need four months, six weeks, six weeks. No, he did not name a specific amount of time. My expectation in requesting relief from courts quite often is I may ask for all sorts of time, and they'll say, this is it. And, yes, if there had been an extension of time, he would have been obligated to meet whatever the requirements were of the court. But it was just ignored. It's obvious that although he properly filed this request, it was ignored. So strong merits, proposed alternative pleading, a request for being treated the same way as the other side in getting extensions of time, and just very careful attention to the merits of the case. I believe that that will allow the court to exercise its power under 60B-6 to grant relief in this case without opening the floodgates to every frivolous case that may come along. And we thank the court for its attention to what's, I recognize, a difficult question. Mr. Moose? Chief Judge, Judge Harrod, Judge Oldham, good morning. Marvin Moose for the Appalachians. It's been a while since I've seen some of you all, but it's nice to be back. This is not a B-6 case. When I was prepping for this, you all remember Justice Baker from the Texas Supreme Court. He used to give a speech at the CLE presentation called Harnessing the Standard of Review. It was a fabulous speech. It was a fabulous printout. I handed it out to everybody in the appellate section. I wish I still had it. I couldn't show you right now, but it's buried in the office. This is a standard of review case, and Judge Harrod, Chief Judge, you hit on a couple of key issues as to why this is not a unique lawsuit. The motion to stay was not filed in response to the questionnaire. It was not filed in response to the motion to dismiss. It was filed after a recommendation of dismissal. So they waited until a final ruling to say, I need more time, and never told the court how much. So it was not timely requested, as argued in the brief, by any means. The appellants want a ruling reversed. I assume that the only thing that they're really asking is the order on the Rule 60 motion, because that's all that's in front of the court under Supreme Court and Fifth Circuit authority. The issue of the final judgment is not under attack. The motion to stay is not under attack. He did say in his brief that the court abused its discretion in not granting additional time. He did argue that, but under the standard of review, he can't. And that's where I'm going with this one. It says if there's no appeal taken from a judgment, the denial of a 60B motion does not bring up the underlying judgment for review. That's Browder v. Director of Department of Corrections, U.S. Supreme Court. This court has repeated that multiple times. Nor are pre-judgment motions subject to this Rule 60 motion. What should have been filed when, instead of the motion to stay, a motion for extension of time to appeal? That's what should have been filed, or a notice of appeal of the final judgment. But he wasn't going to be able to appeal it because he didn't yet have the materials. I mean, appeal wouldn't have helped because there wouldn't have been the case wasn't yet. He didn't have the stuff for the case yet. So to say that there wasn't, I don't understand what he would have appealed. You're appealing the denial of the motion to stay? Yes. And the underlying judgment. This was a Monell case. It was alleged as a Monell liability case against the county and LaSalle. Those are the only two defendants. And as Mr. Lippe noted, the magistrate judge, when he set the briefing schedule, he set out a detailed, detailed outline of what needs to be argued. I was impressed how detailed that outline was on what you need to put in your response. Jenkins didn't file a response. There is no argument by him until the objection to the recommendation of dismissal. That is the first argument that he made. And so when the motion to stay came in and when the objection comes in, what did Judge Horan and Judge Lynn do? They went back and they looked at the docket and said there's radio silence all over this case. We have no filings. All you sent in were medical records, which we sealed for you. We sat on it for eight months before ruling. And nothing happened there. So there is lack of diligence that covers everything here. But back to the standard of review, Judge Elrod, and I think this may answer what you were getting at right there. Under this court's case law, it's not enough that granting relief under Rule 60 was permissible or even warranted. The question is, was the denial so unwarranted as to constitute an abuse of discretion? And that's Stiplekovich, Hess. In template, this court said, a Rule 60 motion cannot be used to raise arguments which could and should have been made before the judgment issued and can be not used to argue a case under a new theory. That is exactly what this Rule 60 motion is. It is arguing this case under a new theory against new defendants, and the proposed amended complaint was not even filed until five months after statute of limitations ran. That's a key point here. It was in March of 2017. So going back to what did Judge Horan do? Judge Horan got a standard pro se complaint. I am incarcerated in this county by this company. Their medical staff didn't treat me. That's the allegation in the complaint and the questionnaire. Therefore, you, the county, and you, the corporation, are liable because your staff didn't do it right. That's not really what they're arguing. That's what he argued below. I'm talking about the original complaint, Your Honor. I'm reading from the questionnaire. The questionnaire says, I sought medical attention by Johnson County facility medical practitioners, and they did not give it to me after four evaluations. That is the answer to the municipal liability question that Judge Horan was looking at at the time. Do we know why they transferred him on the day he was supposed to have his surgery? Can we at all consider the egregious facts here? That's an attack on the judgment. But as a reason that the 60B should have been granted because the facts are so uniquely excessive. It's not in the record. The issue of why the transfer there is not in the record. Is it just a coincidence? I don't know, and I think it is incorrect for Mr. Lippe to assume that LaSalle Southwest made the transfer decision. These are county defendants. Counties are the ones that pay, and they're the ones that move them around. We don't know why they were transferred from one facility to another. It's not in the record. And on the issue of extensions, you mentioned you were going to ask me about that. I requested one formal extension, one. And that was to get all of his inmate files and grievance files. The medical records came along with it. The only thing that was at issue in our motion to dismiss and motion for summary judgment was did he exhaust under the PLRA? He didn't. Late. Step one, no step two. Now, that's what I had to go through and look at. I have a questionnaire. I have a complaint that said you, the medical staff, who are not parties, didn't treat me on this date, this date, on this date, and I was supposed to go to a doctor on this date, and I didn't. So the only thing I did in that initial motion, and it's in there, and it's one of the sealed documents. I believe it's Doc 29, is we went through the grievances because it's a pro se case alleging Monell liability. What are the first two things that a district court wants to know? Have you passed Iqbal? Have you passed Monell? Did you pass Spiller and Piotrowski? No, no, no, no. Did he exhaust? I get that question all the time. It's usually in the questionnaire. It's in the pro se complaint, and if they say, yes, I did exhaust, we come in and immediately file an alternative motion for summary judgment and say, no, you didn't. Here's the policy. Now, that had to be tracked because those dates were at different jails. So, yeah, okay, I requested one 30-day extension to get that. The two sua sponte, we've talked about this. It's in the record. It was in August and September of 2017, and I had 12 feet of water in our offices. Harvey hit, okay, and that was the deadline to file in two days. I called the court and said, turn on the news. I can't get to the office. I can't get to the files. Our servers are fried, and the court granted the sua sponte extension and granted one more after that. Well, it's kind of a request. It's a call. It's a call. It's not a formal motion, but you called the court. I called the court. You are right. So I would say that's an informal request to the court. So the other one was a formal motion, and that was an informal request. But it was not to obtain records. I had the records, and all I cared about were grievance files at that point in time because that's how we're processing this. It's Mr. Jenkins never requests an extension to file anything. If he had contacted me and said, I need to file a response to your motion, I'd just say, how much time do you need? I don't care. I don't argue with Mr. Lippy, and I don't argue back and forth on extensions. We each had some on the Rule 61 for medical reasons. So it is inappropriate for us to consider whether the merits are sound or strong or exceptional in ruling on whether there was error in granting the 60B. Is that correct? Yes, depending on which subsection you're looking at. Under 60B-1, under 60B-1, it's an excusable neglect argument, and it boils down to one thing only. I was a pro se, and I did not know what I was doing. That's been rejected by this court multiple times. Buffion, Sanders, I believe, Chief Judge, you were on the Sanders case. And that just isn't enough to get over B-1. B-2, the newly discovered evidence on the record is that they're making a big deal out about the medical requests that were in there. The only thing that was at issue in this case, like I said, up to that point, filed 364 days after judgment, was grievances. A request in a medical file is not a grievance. All I looked at were the formal grievances, and we filed them. Every single grievance that he filed is in this record that the judge had in front of him. Now, the issue of medical requests, note in their brief whenever you see the phrase, LaSalle was deliberately indifferent or consciously indifferent, what they're really saying is somebody in the medical department dropped the ball. They are attributing fault by medical providers to a municipality, to municipalities. Johnson County is not even mentioned in the Rule 60 motion. It's not even mentioned in the brief on appeal. It's first raised in the reply brief. I believe we've briefed that. I think it's abandoned the claims against the county. But they are arguing individuals made mistakes. Now, a year after judgment, we get to go back and rephrase that as a new custom policy argument. That is re-argument. That is rehashing. It's under a new theory, and it's new parties. Now, in their proposed amended complaint, yeah, they're trying to add in some nurses for a March 2017 claim. That's going to get tossed very quickly. So I do not think the newly discovered evidence impacts what is going on here. I really do not. It was not an issue because no individuals were sued in the initial complaint. Mr. Jenkins knew who his nurses were. He knew who his doctors were. He knew who the treating physicians in the jail were. There's a lot of D1234 blanks in those forms. He could have added them in. Then we'd be having a different discussion on the records, I believe, Judge Elrod. But as it stands now, it was a Monell case, and it was properly dismissed as a Monell case. There's one case that is not in our brief. Actually, there's two cases that are not in our brief, and I think this answers the third part of Judge Elrod's question. The first one, which goes back to the standard of review. It was National City Gulf Finance v. Scott, 899 Fed Third 412. Fifth Circuit, 2018. Rule 60b-1 was not intended to alleve a party of the consequences of decisions deliberately made, although subsequent events reveal such decisions were unwise. That's what we're arguing here. I made a mistake in proceeding pro se. The court told me what I needed to plead. And now they want to come back and re-argue under a new complaint and a new set of facts. The other issue was the 60b-6 argument. Camp v. United States came out July or June, I believe. June 13, 2022. Rule 60b-6 only applies if b-1 through b-5 are inapplicable. B-2 is newly discovered evidence. That's their argument. Their b-1 argument is excusable neglect, lack of funds, which has been rejected as a b-1 ground. All of their b-6 arguments are in b-1 through 5. And Judge Horan noted that. If you go look at the FCR denying the Rule 60 relief, he noted that you can't do this as a catch-all. What should he have done, Jenkins, at the time? I mean, he should have done something other than ignore a dispositive motion for nine months, eight months. That's not explained. Other than he didn't understand, and we know under Viffian and Sanders, that's not enough. In our brief, we cited the Clark v. Thibodaux City on page 14. And we cited it for the proposition on the pro se issue not being sufficient. But there was some pretty strong language in there. And it kind of sounds familiar. The court said in that case that it's 787 Fed Appendix 198 at 203. Clark had the opportunity throughout the course of this litigation to correct or amend his complaint. So did Jenkins. He could have added nurses. He could have added doctors. He could have fixed it when he saw the... He had, under Rule 15, he had plenty of time from when I filed the motion to dismiss. He elected not to take advantage of it. Clark also had the opportunity to oppose the defendant's motion and explain to the district court why he thought that his complaint stated sufficient grounds for relief. He didn't do that. Actually, what it says here is he again failed to exercise his rights. And here's the key part. Indeed, Clark did not comment on the defendant's motion until the district court had already granted the first dismissal. And then his argument offered was as a pro se litigant, he cannot be expected to know all the rules. That really is very close to what is being argued here. Back to the newly discovered evidence in the amended complaint, which was never filed. They complained that the judge should have considered those facts. Those facts weren't in front of the judge under Rule 60 relief. He's looking back. This is what I had in front of me. Tell me why I should not have dismissed it. And he didn't do that. And it was all this should have been, could have been. And our best cases are Befyan and Sanders. Just since this brief was filed, six other district courts have relied on Befyan for the exact same reason. Counsel, your time has expired. I think we have your argument. Thank you. Thank you. Take a break. To address the arguments by opposing counsel, the standard of review of a denial of a Rule 60b motion is abuse of discretion. However, in the authorities we cited in the supplemental citation yesterday, it included United States v. Bevel, where this court stated that when denying relief means that no court will consider the merits of the underlying claim, we apply a lesser standard of review under which even a slight abuse justifies reversal. That's what we're dealing with in this case. Those are the standards that need to be applied. We're not trying to use 60b-6 as a catch-all. Our argument under B-1 is excusable neglect. I'm not a lawyer. I screwed up. Give me a break. That doesn't work. And that's why I haven't spent much time arguing it before this court. B-2, newly discovered evidence. He didn't have, I didn't have all of the records, but that probably doesn't meet the standards under B-2. Have we satisfied the extraordinary circumstances? It's true that if you want to apply the technical straight-line requirements that counsel for appellees has urged, and if I had failed to meet those standards, this court could chastise me justifiably on many of those points. Mr. Jenkins did not understand what he needed to do. In his request filed on July 26th, he said, acting in a pro se litigant condition with limited resource, access to legal precedent, law library, assistance, and aid, plaintiff praised the honorable court, C, understanding that the plaintiff lacks legal lexicon and consideration that the current condition of incarceration limits his ability to obtain legal representation. And it's the intention of the plaintiff to retain counsel upon his release on August 10th. And he allows, he requests that the court extend his time. Should justice be done in light of all of the facts? The facts are that he was denied treatment because he was transferred. LaSalle knew it. Well, no, this is not an attempt to add new parties at a late date. The medical staff at LaSalle is not separate and apart from LaSalle. It's part of their staff. If he's trying to say we're trying to impose supervisory liability without personal participation, I'm sorry I don't have the case names right in front of me, but at 543 F. 3rd, 264, 543 3rd, 264, and 406 F. 3rd, 375, 406 3rd, 375, this court has held that where the supervisor knows of the actions and doesn't do anything, the supervisor is responsible under 1983. The motion to stay, there's all sorts of reasons why this should have been filed at an appropriate time. There are all sorts of reasons why the proper filing should have been made by the plaintiff. But again, that's really an attempt to look at the underlying merits of the case on his behalf. The question here is should the Rule 60B motion have been granted? Was it an abuse of discretion to deny 60B relief? And here we've established that there was very clear liability, very clear responsibility on the part of LaSalle, that there was a timely request, and that the court was disparate in granting extensions on one side, even with a simple phone call, and denying them or ignoring them on the other side. We appreciate the court's consideration and ask for reversal of the denial of the 60B motion.